**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

United States of America, Criminal No. 11-255(1) PJS/AJB

Plaintiff,

v. **REPORT AND RECOMMENDATION**

Milton Carlton Rucker, Jr.,

Defendant.

Laura Provinzino, Esq., and Leeann K. Bell, Esq., Assistant United States Attorneys, for the plaintiff, United States of America; and

Vincent F. Waters, Esq., for defendant Milton Carlton Rucker, Jr.

This action came on for hearing before the Court, Chief Magistrate Judge Arthur J. Boylan, on September 20, 2011, and October 12, 2011, at the U.S. Courthouse, 300 South Fourth Street, Minneapolis, Minnesota 55415. Testimony was presented and exhibits were received with regard to suppression of search and seizure evidence.

Based upon the file and documents contained therein, along with testimony and exhibits presented at hearing, and the memorandums of counsel, the magistrate judge makes the following:

**Findings**

An FBI Special Agent's credentials, credit cards, and other belongings were stolen at approximately 4:40 p.m. on July 22, 2011, in an automobile break-in. The theft of the items was promptly discovered and reported, and law enforcement personnel were notified that a stolen credit card had been used at a Holiday gas station, and someone had attempted to use a credit card at a Target store. Surveillance video from both the Target store and the Holiday

station revealed a female using or attempting to use a credit card, and the Holiday video also showed the woman entering a vehicle having an identifiable license number. A license check indicated that the car, a tan Buick, was registered to Ashley Bastin. The described vehicle was also connected to previously reported car tampering incidents. Officers thereafter contacted Ashley Bastin and determined that she was not the person shown in the surveillance videos. Bastin stated that Milton Rucker, the defendant in this case, used the Buick.

Officers obtained Mr. Rucker's address on Cedar Lake Road in Minneapolis, Minnesota, and they located the Buick at that address during the evening of July 22, 2011. The two-story building contained multiple apartments with shared bathroom facilities for the upstairs units. Agents approached and knocked on the exterior door shortly after midnight on July 23, 2011. The door was answered by Malik Rucker, the defendant's brother, and two females were also present. Malik Rucker stated that Milton Rucker was staying in the upstairs unit # 2, and upstairs unit # 3 was occupied by another individual, Mr. Montgomery. Police knocked at unit # 2 and the door was opened by defendant Tania Thompson, the woman who had been observed in the surveillance videos at Holiday and Target. Agents then called for other apartment residents to come out, at which time defendant Rucker appeared in unit #2 and Mr. Montgomery appeared at unit #3. Mr. Montgomery consented to search of unit #3. Ms. Thompson and Mr. Rucker were detained and brought to the first floor porch to wait while officers conducted a protective sweep of unit #2 in light of safety concerns based upon the stolen FBI duty weapon. No items were seized in the protective sweep.

Thereafter, at approximately 12:30 a.m., officers decided to seek a state warrant to search unit #2. During this time Mr. Rucker declined to cooperate with officers and refused to

provide his name and other information. He stated that he was having chest pains, and an ambulance was called to the scene at approximately 1:00 a.m.

Meanwhile, when police arrived at the apartment building someone attempted to contact defendant Rucker's mother, Jacqueline Bailey, the owner of the building. Defendant's stepfather, Larry Watts, then came to the location shortly before midnight on July 22, 2011. Mr. Watts met with a FBI Special Agent to whom he identified himself as a representative of the property owner. Watts advised the agent that Rucker was staying in unit #2 for free, and that Rucker had a drug habit and might be breaking into cars to support his drug use. Mr. Watts further stated that his wife consented to a search of the downstairs area and unit #2, and she didn't want any damage to occur. Notwithstanding such consent, agents stated they would wait for a search warrant. Mr. Watts was present when the defendant was taken from the location by ambulance, and he was present when the warrants to search the Buick and unit #2 arrived. Mr. Watts testified that officers searched the vehicle and seized a laptop computer before the warrant had arrived. He further testified that he did not observe the search of unit #2.

**Auto and Residence Search Warrants.** On July 23, 2011, Hennepin County District Court Judge Regina Chu issued two separate search warrants. One of the warrants authorized the search of a particularly identified apartment address in Minneapolis, Minnesota (Gov't Hrg. Ex. 1), further described in the supporting affidavit as the residence of defendant Milton Rucker. The second warrant authorized the search of a particularly described 1999 Buick Century automobile, located in the driveway at the apartment address (Gov't Hrg. Ex. 2). Each of the warrants authorized nighttime searches and described the same items to be seized as being a duty weapon, FBI credentials and badge, credit cards, identification documents, and other

property belonging to an FBI Agent. In addition, the applications requested authority to seize theft tools, materials showing constructive possession, photos and videos, and media storage and records of theft. The warrants were issued on the basis of information contained in the identical Affidavits of Minneapolis Police Investigator Jomar Villamor. Both affidavits described commercial surveillance videos of the vehicle at locations in which stolen credit cards had been used and further referenced statements of an identified person implicating defendant Milton Rucker in criminal activity. The warrant applications expressly state that defendant Rucker had been arrested and that his apartment residence had been secured[1] pending issuance of the search warrant. The warrants were issued at 2:15 a.m. and were executed at 2:25 a.m.[2]

The warrant applications contained incorrect identifying information in stating that Ashley Bastin had initially answered the door when officers arrived at the search residence. The applications also erroneously identified Ms. Bastin as the person seen using stolen credit cards, and that she had admitted to the offense, and the affidavit incorrectly indicated that Ms.

---

[1] The application specifically stated that the residence had been "secured and locked, pending issuance of the search warrant." The government's witness, FBI Special Agent Mark Fredkove, testified that the apartment had been secured but he was not certain that it had been locked. The defendant's motion to suppress search warrant evidence did not indicate that search warrants were being challenged as to the veracity of content, in addition to sufficiency of probable cause evidence. The warrant was therefore submitted for four-corners review. Defendant did not file a formal motion for hearing under Franks v. Delaware, 483 U.S. 154 (1978) and did not otherwise provide pre-hearing notice to the government or the court that he might be seeking to advance claims that would be subject to a Franks analysis, including the requirement that the defendant make a substantial preliminary showing that affidavit contents or omissions were either made with intent to make the affidavit misleading or with reckless disregard as to whether the affidavit became misleading as a result.

[2] The state warrant expressly authorized nighttime execution and defendant suggested that he would challenge the nighttime search. However, he did not identify nighttime search as a suppression issue in his post-hearing memorandum and he provided no argument for suppression of evidence on based upon unlawful nighttime execution.

Bastin had stated that Rucker routinely commits thefts from vehicles. Ms. Bastin was correctly described as the registered owner of the Buick Century, but the woman met by police at the apartment was co-defendant Tania Thompson.

Defendant Milton Rucker provided testimony at hearing indicating that law enforcement officers had arrived at the residence between 10:30 p.m. and 11:30 p.m., prior to the search of his apartment, and that he had been arrested at that time. He was handcuffed and read his Miranda rights, and he was detained outside on a back porch. While he was detained on the porch he overheard officers making statements regarding items seized from the apartment and the vehicle. Mr. Rucker was uncertain as to the time at which he overheard such statements.

**DNA Search Warrant.** On July 26, 2011, United States Magistrate Judge Jeffrey J. Keyes was presented with an application for a warrant authorizing the seizure of a DNA buccal swab from the person of Tania Marie Thompson (Def. Hrg. Ex. 3).[3] The DNA warrant identified the object of the warrant as at least four cotton swabs from the mouth of Tania Marie Thompson. The warrant was issued on the basis of information contained in the Affidavit of FBI Special Agent Mark R. Fredkove. The affidavit described the underlying thefts of property from a motor vehicle, surveillance video evidence, and evidence obtained in the search of defendant Rucker's residence. In addition, the DNA warrant affidavit stated that the known DNA sample was requested to allow comparison to samples that might be obtained from the

[3] The exhibit offered by the defendant and received by the court at the hearing consists of the warrant application and supporting affidavit. The DNA seizure warrant is not included. The exhibit application seeks only the DNA of Tania Marie Thompson, though the supporting affidavit indicates that authorization to obtain the DNA of Milton Carlton Rucker, Jr. was also being requested. Defendant has not advised the court that he is seeking suppression of DNA evidence and has not indicated a basis for suppression of either Tania Thompson's or his own DNA.

break-in vehicle, as well as a watch, a wallet, and FBI credentials that had been recovered, and other specified items that might be recovered, including the Special Agent's handgun.

Based upon the foregoing Findings, the magistrate judge makes the following:

**Conclusions**

**Search Warrants.** Evidence seized pursuant to separate warrants to search a Minneapolis apartment residence (Gov't Hrg. Ex. 1) and the 1999 Buick parked outside the residence (Gov't Hrg. Ex. 2) during the early morning on July 23, 2011, was not unlawfully obtained in violation of the constitutional rights of defendant Milton Rucker. The warrants were issued on July 23, 2011, and were based upon sufficient probable cause as stated in the Affidavit of Minneapolis Police Investigator Jomar Villamor and as determined by Hennepin County District Court Judge Regina Chu. The warrants properly and sufficiently described the respective locations to be searched and identified the items to be seized. The warrant applications further stated a nexus between each search location and the items to be seized. The search warrants in this matter were lawfully issued and executed and there is no requirement for suppression of evidence seized pursuant to either warrant.

Defendant apparently seeks to raise a belated challenge under Franks v. Delaware, 483 U.S. 154 (1978), based upon a contention that the misidentification of Ms. Bastin as an accomplice and companion of Mr. Rucker is a misstatement of material fact relied upon by the issuing judge.[4] Defendant also references testimony whereby evidence seized from the

[4] Defendant Rucker first provides notice of possible Franks issues in his post-hearing memorandum in which he asserts that the "substantial preliminary showing"requirement has been satisfied through testimony at hearing. Though is certainly possible that new facts could come to light at a hearing which would support Franks claims, and perhaps constitute a substantial preliminary showing that would justify a separate hearing on whether statements or omissions were made recklessly or with intent to mislead, such has not occurred in this case. As

Buick, as identified in the warrant inventory, was not provided to the signing judge. The court concludes that there is no Franks issue in this case.

A challenge to a search warrant under Franks v. Delaware is based upon the contention that officers intentionally misrepresented facts in order to obtain the warrant. Franks v. Delaware requires that a substantial preliminary showing be made in order to allow the court an opportunity to evaluate the significance of the offending evidence or omissions in light of the probable cause considered as a whole, and thereby determine whether a hearing is necessary at all. United States v. Jacobs, 986 F.2d 1231, 1233-34 (8th Cir. 1993). Defendant is required to show: (1) that police added or omitted facts with intent to make the affidavit misleading, or in reckless disregard of whether the affidavit thereby becomes misleading, and (2) that the affidavit, with evidence properly presented, would not have been sufficient to show probable cause. Id. Hearing is not necessary if probable cause to issue a warrant exists without regard to the questioned evidence.

In this instance the court determines that there has not been a substantial preliminary showing that affidavit contents or omissions were either made with intent to make the affidavit misleading or with reckless disregard as to whether the affidavit became misleading as a result. Furthermore, the court finds that the affidavit would sufficiently state probable cause for issuance of the warrant even if information had been accurately presented in the affidavit. The misidentification of Ashley Bastin as the person who answered the door to Apartment 2, and admitted attempting to use stolen credit cards, does not diminish probable cause to search the

---

noted previously, the defendant has not actually made a motion for a Franks hearing, either timely or late, and for reasons discussed herein, the court concludes that he is not entitled to a Franks hearing in any event.

residence. While the government acknowledges the identification mistake, the defendant has made no showing whatsoever of any intent on the part of officers to mislead the issuing judge. Furthermore, the substance of the information provided by and relating to the misidentified person was not incorrect; identification of the person providing the information was not critical to probable cause; and the mistake was not the result of a reckless disregard for the truth. Upon consideration of the arguments and evidence presented with respect to the probable cause statement of the search warrant affidavit, the court finds that defendant has not made the substantial showing necessary to establish that he is entitled to a Franks hearing, or that there is any reason to believe that the court would be aided by the testimony of additional witnesses. The motion to suppress under Franks is denied.

**Common Area Search.** Defendant Milton Rucker did not have a legitimate expectation of privacy as to property located in a closet in an upstairs bathroom that was used in common by residents of separate apartments. The closet was lawfully searched and suppression of items discovered and seized from the common area bathroom closet is not required. In addition, the search of the closet area was conducted by officers in objectively reasonable reliance upon the search authority under the lawfully issued and executed apartment search warrant.

The defendant has the burden of showing that he had a legitimate expectation of privacy in the searched area and in so doing must show both a subjective expectation of privacy and that the expectation is objectively reasonable. United States v. McCaster, 193 F.3d 930, 933 (8th Cir. 1999). Factors to consider include: whether the defendant has a possessory interest in the seized property or the place searched; whether the defendant could exclude others from the

location; whether the defendant took efforts to maintain privacy; and whether the defendant had a key to the particular search area. Id. Evidence in this case establishes that multiple tenants had access to the bathroom closet and there is no showing whatsoever that Mr. Rucker had any exclusive possessory interest in the closet; that he had any ability to exclude others from the closet; that he had made any attempt to establish a privacy interest, or that he had a key to the closet. Consequently, the defendant has not established a legitimate expectation of privacy in the closet. To the extent that Mr. Rucker seeks to suppress those items on grounds that the search area was outside the scope of the warrant to search his apartment, it was objectively reasonable for officers to search the common bathroom closet in reliance upon the search warrant because of the closet's close proximity to his apartment. United States v. McCaster, 193 F.3d at 933 (citing United States v. Leon, 468 U.S. 897, 922 (1984).

**Vehicle Search Warrant.** Evidence seized from a 1999 Buick parked in the driveway at defendant's apartment address was obtained pursuant to a lawfully issued and executed search warrant as previously determined herein. Defendant has not shown by credible and persuasive evidence that property was seized prior to issuance of the warrant, and in any event, the seized property was lawfully obtained pursuant to the automobile exception to the warrant requirement.

Defendant Rucker provided testimony to the effect that he overheard officers talking about evidence from the vehicle before the search warrant had been issued. However, he did not observe a vehicle search, and he was unable to provide any concrete evidence as to time of the search or identification of the property seized from the vehicle. Similarly, Larry Watts testified that property was taken from the vehicle before the warrant was executed, but his

testimony did not indicate the time of the search and did not establish that the warrant had not yet been issued. In any event, the vehicle had been observed on video taken at a Holiday station where gas was purchased with a stolen credit card, and at a Target store where co-defendant Tania Thompson attempted to use a stolen credit card. Under these circumstances the court finds that there was probable cause to justify search of the vehicle under the automobile exception to the warrant requirement in light of a fair probability that contraband or evidence of crime would be found in the vehicle. United States v. Brown, 634 F.3d 435, 438 (8th Cir. 2011) (citing United States v. Davis 569 F.3d 813, 817 (8th Cir. 2009). Suppression of evidence seized from the vehicle is not required.

Based upon the foregoing Findings and Conclusions, the magistrate judge makes the following:

## RECOMMENDATION

The Court **hereby recommends** that:

1. Defendant Milton Carlton Rucker, Jr.'s Motion for Suppression of all Evidence Obtained pursuant to the Execution of a Search Warrant be **denied** [Docket No. 41].

2. Defendant Milton Carlton Rucker, Jr.'s Motion for Suppression of all Evidence including Statements and Physical Evidence be **denied as moot** [Docket No. 46]. With respect to suppression of statements, the government advised the court and counsel that the defendant made no statements to officers that the prosecution intends to offer at trial in this case. The motion to suppress statements is therefore moot. As to suppression of seized evidence, no testimony or exhibits were offered at hearing with respect to seized evidence, apart from evidence obtained pursuant to search warrant which is otherwise addressed herein. The motion

to suppress seized evidence is therefore moot as well.

Dated: November 9, 2011

s/Arthur J. Boylan
Arthur J. Boylan
United States Chief Magistrate Judge

Pursuant to Local Rule 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties, written objections which specifically identify the portions of the Report to which objections are made and the bases for each objection. This Report and Recommendation does not constitute an order or judgment from the District Court and it is therefore not directly appealable to the Circuit Court of Appeals. Written objections must be filed with the Court before November 24, 2011.

Unless the parties stipulate that the District Court is not required by 28 U.S.C. § 636 to review a transcript of the hearing in order to resolve all objections made to this Report and Recommendation, the party making the objections shall timely order and file a complete transcript of the hearing within ten days of receipt of the Report.