# UNITED STATES DISTRICT COURT
for the
District of Minnesota

RECEIVED
FEB 27 2012
CLERK, U.S. DISTRICT COURT
ST. PAUL, MINNESOTA

In the Matter of the Search of
*(Briefly describe the property to be searched or identify the person by name and address)*

a black LG Virgin Mobile cellular telephone

Case No. 11-255 (PJS/AJB)

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:
a black LG Virgin Mobile cellular telephone in the custody of the Federal Bureau of Investigation

located in the _____ District of ____Minnesota____, there is now concealed *(identify the person or describe the property to be seized)*:
See Attachment B to the affidavit of Special Agent Mark R. Fredkove

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
- ☑ evidence of a crime;
- ☑ contraband, fruits of crime, or other items illegally possessed;
- ☑ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. 641, 922 & 924 | Theft of government property/Possession of a firearm |
| 18 U.S.C. 1028A | Aggravated identity theft |
| 18 U.S.C. 1344 & 1349 | Bank fraud |

The application is based on these facts:
See the affidavit of Special Agent Mark R. Fredkove

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Mark R. Fredkove, Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date: __02/03/2012__

_____
*Judge's signature*

City and state: St. Paul, Minnesota

Tony N. Leung, United States Magistrate Judge
*Printed name and title*

SCANNED
FEB 28 2012
U.S. DISTRICT COURT ST. PAUL

In the Matter of a Search of

(a) a black LG Virgin Mobile cellular telephone,
(b) a gray Motorola Verizon cellular telephone with a clear cover,
(c) a black and gray Samsung Verizon cellular telephone, and
(d) a black Sanyo Boost Mobile cellular telephone

STATE OF MINNESOTA )
                   ) SS.   AFFIDAVIT OF MARK R. FREDKOVE
COUNTY OF RAMSEY   )

I, Mark R. Fredkove, being first duly sworn and under oath, state as follows:

1. I am a Special Agent (SA) with the Federal Bureau of Investigation (FBI). I have been employed as a Special Agent for seven years and have been assigned to the Minneapolis Field Office since August 2010. I am currently assigned to a squad with the primary responsibility of investigating bank robberies and other violent crimes.

2. This affidavit is made in support of a request for a search warrant authorizing the search of (a) a black LG Virgin Mobile cellular telephone, (b) a gray Motorola Verizon cellular telephone with a clear cover, (c) a black and gray Samsung Verizon cellular telephone, and (d) a black Sanyo Boost Mobile cellular telephone, originally entered as evidence items 16-19 in Minneapolis Police Department case

number 11-214885, recovered following a search of 140 Cedar Lake Road North, Apartment #2, Minneapolis, Minnesota on July 23, 2011 (hereinafter "Subject Telephones").

3. Subject Telephones may be capable of being used as more than merely a telephone. They may be capable of storing and/or processing data in digital form as well as used to facilitate voice and SMS text messaging communications. Subject Telephones may have a digital camera attached and may be used to create and store photographs, audio files, and video files. Subject Telephones may also be capable of accessing the internet and acting as geographic location devices. Although some of the stored electronic data called for by this warrant might be found in the form of user-generated documents (such as photograph and video files), the devices can contain other forms of electronic evidence as well. In particular, records pertaining to or tending to show how the Subject Telephones have been used, what they have been used for, who may have used them, and who may have been responsible for creating or maintaining records, documents, programs, applications and materials contained on Subject Telephones are called for by this warrant.

4. Subject Telephones are believed to contain evidence in violation of Title 18, United States Code, Sections 641, 922, 924, 1028A, 1344, and 1349. The facts and information contained in this affidavit are based upon my own investigation and observations and

those of other agents and law enforcement officers involved in the investigation. This affidavit contains information necessary to support probable cause for the attached Application. It is not intended to include each and every fact and matter observed by me or known to the Government.

5. The following recitation of facts was submitted in support of a Complaint and arrest warrant against Milton Carlton Rucker, Jr. and Tania Marie Thompson, a/k/a Tania Marie Carson, on July 26, 2011 before the Honorable Jeffrey J. Keyes. See Criminal Complaint and Affidavit of Mark R. Fredkove, 11-mj-304 (JJK). (Dkt. 1.) The case is scheduled to go to trial February 21, 2012.

6. On July 22, 2011, between approximately 4:40pm – 5:15pm, a Ford Explorer owned by a FBI Special Agent had the rear window broken out while parked near 1999 Franklin Avenue West, Minneapolis, Minnesota. Following the break in of the Explorer, a theft occurred of a duffel bag from the vehicle and the Special Agent's duty pistol and holster, FBI badge and credentials, personal and government credit cards, a watch, and other items were stolen. The Special Agent immediately reported the credit cards stolen to his financial institution.

7. A short time later, the FBI Special Agent received notice from his financial institution that one of the stolen credit cards had been used at an unspecified Holiday gas station and an attempt to use the card had occurred at a Target store in Brooklyn Center,

Minnesota. Agents contacted a Target Investigations employee and confirmed the attempted use of the stolen credit card at approximately 5:52pm. The Target Investigations employee reviewed video surveillance from the Target store in Brooklyn Center and advised that an unknown white female wearing a white tank top, pink pants, and an orange bandana was observed at a register attempting to use the stolen credit card. The employee observed the unknown female on video surveillance exiting the Target store carrying a black purse and entering a tan sedan in the parking lot. The female had attempted to purchase clothing and a $100 American Express gift card for a total of $270.37 using one of the FBI Special Agent's cancelled credit cards.

8. Additional investigation determined that the stolen credit card had been used at a Holiday gas station in Minneapolis and contact was made with an employee of the store. The Holiday gas station employee confirmed that the stolen credit card had been used for a $52.03 charge for gas at approximately 5:13pm. Additionally, FBI Agents reviewed video surveillance from the store and determined that unknown white female wearing a white tank top, pink pants, and an orange bandana had used the credit card to make a purchase. Subsequent review of the video surveillance by an FBI Agent and a Holiday employee revealed the female entering what appeared to be a grey sedan bearing Minnesota license plate 972GDA. Agents determined that the unknown white female in both the Target and

Holiday gas station video surveillance footage was likely the same individual.

9. A Minnesota Department of Vehicle Services check of Minnesota license plate 972GDA determined that ASHLEY NICOLE BASTIN (DOB xx/xx/1990), of 223 Cedar Lake Road South, Minneapolis, Minnesota was the registered owner of a 1999 tan Buick Century sedan (hereinafter "Buick").

10. A Minneapolis Police Department ("MPD") report from June 21, 2011, revealed that the Buick with license 972GDA was observed in the same area of a reported theft from motor vehicle at 3712 Calhoun Parkway West, Minneapolis, Minnesota. Specifically, prior to the theft a victim-witness observed an unknown black male walking next to parked cars holding a shiny metal object close to his body while he was looking into the windows of vehicles. The witness also observed the black male with a white female driving a tan colored sedan bearing Minnesota license plate 972GDA. A short time later, the witness went for a walk around the lake and then reported to Minneapolis police officers that her vehicle had been broken into and her purse, cell phone, and credit cards were among the items taken.

11. A supplemental MPD report from June 30, 2011, indicated that BASTIN may be involved with thefts from motor vehicles with an individual by the name of MILTON RUCKER (DOB xx/xx/1972), of 140 Cedar Lake Road North, Apartment #2, in Minneapolis. The possible

relationship between BASTIN and RUCKER was based upon information provided by the Bloomington Police Department ("BPD"). A BPD report indicated that a witness observed a black male walk up to her parked car at a Life Time Fitness and tamper with the driver's side window. The victim-witness also observed a slender, white female wearing jeans who appeared to be with the black male. As the victim-witness approached her vehicle, both individuals ran to a Buick bearing Minnesota license 972GDA and left at a high rate of speed. The victim's vehicle had the driver's side window broken, but no items were taken. A BPD detective contacted BASTIN, who stated that RUCKER was using the Buick and denied being present at the Life Time Fitness. The victim-witness identified RUCKER from a photo lineup as the individual tampering with her vehicle, but did not identify BASTIN as the white female seen with RUCKER.

12. On July 22, 2011, at approximately 10:30pm, law enforcement officers conducted physical surveillance and determined that the Buick was parked in the driveway of 140 Cedar Lake Road in Minneapolis, a known address for RUCKER. Law enforcement officers approached the apartment building and knocked on the outside door for the building. A white female, later identified as TANIA MARIE THOMPSON, a/k/a TANIA MARIE CARSON (DOB xx/xx/1976), answered the door to the building and was identified by FBI Agents as matching the physical description of the female observed in the video surveillance footage from Target using of the stolen credit card of

the special agent. THOMPSON stepped outside the building at the request of officers and was placed under arrest by MPD.

13. Law enforcement officers then called to other persons inside the apartment building. A black male, later identified as MILTON RUCKER, exited Apartment #2 and was placed under arrest by MPD. A protective sweep of Apartment #2 was conducted and the apartment was secured and held pending the issuance of a search warrant.

14. On July 23, 2011, at approximately 2:15am, the Honorable Regina Chu of the Hennepin County District Court signed search warrants for 140 Cedar Lake Road, Apartment #2, Minneapolis, Minnesota, and the Buick.

15. Law enforcement officers conducted a search of Apartment #2 and recovered a Bulova wristwatch (later identified as belonging to the victim-Special Agent), purchase receipts, credit cards belonging to other persons, a black wallet with identification and a piece of mail for MILTON RUCKER, $357.00 in U.S. currency, a white tank top shirt, pink pants, a pink bandana, a black purse, and the Subject Telephones. The white female observed in the video surveillance footage from Holiday gas station and Target utilizing the stolen credit card was wearing a white tank top, pink pants, and a pink/orange bandana, and had been carrying a black purse. All evidence recovered was maintained by the Minneapolis Police Department until it was recently transferred into FBI custody on

January 25, 2012.

16. Additionally, a blue purse with a wallet containing a proof-of-insurance card belong to another individual who owned a BMW vehicle was recovered in the apartment. A subsequent check in MPD records showed that the individual was the victim of a theft from motor vehicle on July 12, 2011, in which her purse and wallet were stolen from her BMW vehicle.

17. Agents and Officers conducted a search of the Buick and recovered a metal window punch tool from the driver's door storage compartment. A partial sparkplug and laptop computer were recovered from the trunk of the Buick.

18. Following the arrest, THOMPSON was advised of her Miranda rights by a FBI Agent and agreed to be interviewed. THOMPSON admitted that on July 22, 2011, between 5:00-5:30pm, RUCKER picked her up from the City Center shopping area driving the Buick. RUCKER told THOMPSON to drive the vehicle, and she drove to a Holiday gas station in Minneapolis. Once at the Holiday gas station, RUCKER handed THOMPSON two credit cards to purchase gas. One of the credit cards did not work at the gas pump, but the other card was used to purchase gas.

19. THOMPSON further advised that after purchasing gas, THOMPSON drove the Buick and dropped RUCKER off at RUCKER's apartment located at 140 Cedar Lake Road North in Minneapolis. THOMPSON stated that RUCKER told her to go to Target and try to use the credit cards

there. THOMPSON then advised she drove by herself to the Target on Shingle Creek Parkway in Brooklyn Center, Minnesota. THOMPSON stated she attempted to purchase various household items, but the credit cards were declined. THOMPSON called RUCKER and told him the credit cards were declined. RUCKER then told THOMPSON that there were two additional credit cards in the center console of the Buick and instructed THOMPSON to get rid of them. THOMPSON stated she then threw all the credit cards on the ground in the Target parking lot and returned to RUCKER's house.

20. THOMPSON further told Agents that later in the evening while watching television at RUCKER's apartment, RUCKER received a telephone call on his cellular telephone. THOMPSON stated that she overheard RUCKER talking on the telephone, and he told the person on the other end of the call not to worry about "it" and that he (RUCKER) had "sold it to Jay." THOMPSON also advised Agents that earlier in the day she overheard RUCKER talking on the phone about a "FBI truck" that had a "piece" in it. THOMPSON indicated that she understood RUCKER to be referring to the gun when he used the term "piece."

21. On July 25, 2011, THOMPSON provided an additional Mirandized statement to investigators. In this statement, THOMPSON admitted that she had participated in or was present during the theft from the Explorer. THOMPSON stated that on July 22, 2011, RUCKER and THOMPSON drove the Buick to a location near a lake in Minneapolis and parked behind a Ford Explorer or Expedition (hereinafter

"Explorer"). THOMPSON stated that she observed RUCKER exit the Buick and look inside the window of the Explorer and touch the windows with his hands. RUCKER then told THOMPSON to look inside the window of the Explorer and asked if a bag-like object looked like a purse. THOMPSON told RUCKER that it looked like a purse and observed RUCKER break the rear window with a metal punch tool, which caused the glass to shatter. THOMPSON stated that RUCKER then grabbed a black duffel bag from the rear cargo area of the Explorer and returned to the Buick. RUCKER then asked THOMPSON to retrieve a blue bag that was left in the Explorer, but THOMPSON refused. THOMPSON stated that they departed the area in the Buick.

22. THOMPSON advised that they drove to RUCKER's apartment and parked outside. RUCKER then told THOMPSON that "I hit an FBI Agent." THOMPSON believed that RUCKER was referring to the fact that the items they had stolen from the Explorer belonged to an FBI Agent. THOMPSON stated she then looked into the black duffel bag and observed a handle of a black gun in a black holster. A subsequent interview with THOMPSON determined that this conversation and observation of the gun occurred near an ice arena by a park prior to arriving at RUCKER's apartment. THOMPSON and RUCKER then departed the apartment building without going inside.

23. THOMPSON advised that they then drove the Buick to the Holiday gas station near the Twins stadium and purchased gas with a credit card that had been stolen from the Explorer. After leaving

the Holiday gas station, THOMPSON stated that they drove to the area of Cedar Lake Road and Dunwoody where THOMPSON observed RUCKER wrap a black wallet in a washcloth and throw the wallet in or around a dumpster behind a laundromat. This information was relayed to FBI Agents who subsequently recovered the wallet containing the stolen FBI credentials of the Special Agent in the location specified by THOMPSON.

24. THOMPSON further advised that they drove the Buick back to RUCKER's apartment and THOMPSON observed RUCKER grab the black duffel bag and enter the building. THOMPSON then drove by herself to Target on Shingle Creek Parkway in Brooklyn Center where she attempted to purchase various household items. THOMPSON stated that she attempted to pay for the items totaling approximately $230 with stolen credit cards from the Explorer, but she was advised by the Target employee that the credit cards were declined. THOMPSON then stated that she called RUCKER and told him the stolen credit cards were declined, and RUCKER told her to get rid of the cards. THOMPSON then threw the stolen credit cards on the ground of the Target parking lot and left. All four of the Special Agent's stolen credit cards were subsequently found by patrons in the Target parking lot, turned in to Target security, and returned to the FBI.

25. THOMPSON further advised that a short time later she returned to RUCKER's apartment and did not observe the black duffel bag. Over the next several hours, THOMPSON overheard RUCKER conduct

two telephone conversations with an individual she knows as "BUFF." During these conversations, THOMPSON overheard RUCKER state, "I fucked up. I hit an FBI Agent." RUCKER also told BUFF "I got rid of the piece." THOMPSON indicated that she understood RUCKER to be referring to the gun when he used the term "piece." RUCKER told THOMPSON that BUFF advised him that the FBI was outside of RUCKER's apartment and "they are deep."

26. THOMPSON advised that shortly after the telephone conversation with Buff, law enforcement officers knocked on the door of the apartment building, and RUCKER told THOMPSON to answer the door. Before exiting the room, THOMPSON observed RUCKER with a watch in his hand go over to a miniature air conditioner unit on the floor. THOMPSON overheard RUCKER place the watch inside the air conditioner unit and heard metal-on-metal sounds.

27. THOMPSON told law enforcement officers that in the last five months, THOMPSON has been present with RUCKER during approximately five-to-eight thefts of motor vehicles. THOMPSON estimated that RUCKER was responsible for breaking into at least two vehicles per week. THOMPSON stated that RUCKER preferred to break into vehicles parked at fitness centers and near lakes.

28. Lastly, THOMPSON advised that RUCKER owns the Buick, but paid "Ashley" to list her name as the registered owner. THOMPSON described "Ashley" as a 19-year-old, chubby marijuana customer of RUCKER. On July 25, 2011, FBI Agents interviewed BASTIN who stated

that she registered the Buick in her name at RUCKER's request. BASTIN advised that she did not receive any money to register the vehicle in her name, but she receives marijuana from RUCKER when she goes to his apartment.

29. I have reviewed the criminal history of MILTON CARLTON RUCKER. He has multiple felony convictions, including a federal conviction as a felon in possession of a firearm in 1993 prosecuted in the District of Minnesota. RUCKER's other felony convictions include (1) a 1992 theft, (2) a 1992 aggravated robbery, (3) a 2000 drugs-1st degree sale, (4) a 2008 receipt of stolen property, and (5) a 2008 financial transaction fraud. Based on RUCKER's criminal history, he is a prohibited person who cannot transfer, possess, or own a firearm.

30. Based upon the information provided by THOMPSON and learned in the course of the investigation, I believe that RUCKER possessed and/or used the Subject Telephones recovered in RUCKER's residence in connection with his criminal activities both prior to and on July 22, 2011. These devices typically store relevant information concerning activities and associates, including addresses and telephone numbers, text messages, the times and dates of incoming and outgoing calls and messages, and electronic files such as memoranda, documents, photographs, videos, E-mails, and calendars. Some cellular telephones are capable of providing internet browsing history and geographic location information.

Certain cellular phones are also capable of storing the address information for prior destinations.

31. Therefore, there is probable cause to believe that Subject Telephones recovered following the search of RUCKER's residence, 140 Cedar Lake Road North, Apartment #2, Minneapolis, Minnesota on July 23, 2011, contain evidence of a violation of Title 18, United States Code, Sections 641, 922, 924, 1028A, 1344, and 1349.

32. Based on the foregoing, there is probable cause to believe the data and information electronically stored within Subject Telephones, such as but not limited to details of past telephone contacts, text messages, voice mail messages, photographs, videos, audio files, internet access records, phone numbers, historical geographic location information, and other stored data, contain evidence of the commission of the above-listed violations, evidence concerning the fruits of the above-described criminal activity, and/or evidence concerning the means of committing a violation of the above-listed statute. Accordingly, I request authority to allow technicians to search Subject Telephones for evidence such as that described above.

Further your Affiant sayeth not.

*[signature]*

MARK R. FREDKOVE, Special Agent
Federal Bureau of Investigation

*In Re Matter of a Search of:*
*Four Cell Phones.*

SUBSCRIBED and SWORN to before me *Affidavit of*
this 3rd day of February, 2012. *Mark R. Fredrickson*

_____
THE HONORABLE TONY N. LEUNG
United States Magistrate Judge
District of Minnesota

## Attachment A
## Property To Be Searched

This affidavit applies to the Subject Telephones described as (a) a black LG Virgin Mobile cellular telephone, (b) a gray Motorola Verizon cellular telephone with a clear cover, (c) a black and gray Samsung Verizon cellular telephone, and (d) a black Sanyo Boost Mobile cellular telephone, originally entered as evidence items 16-19 in Minneapolis Police Department case number 11-214885, recovered following a search of 140 Cedar Lake Road North, Apartment #2, Minneapolis, Minnesota on July 23, 2011. The Subject Telephones have been in the custody of the Federal Bureau of Investigation since January 25, 2012.

## Attachment B
## Particular Things To Be Seized

This affidavit covers the seizure of all records pertaining to or tending to show how the Subject Telephones have been used, what they have been used for, who may have used them, and who may have been responsible for creating or maintaining records, documents, programs, applications and materials contained on Subject Telephones. It includes details of past telephone contacts, text messages, voice mail messages, photographs, videos, audio files, internet access records, phone numbers, historical geographic location information, and other stored data.